Raymond GONZALEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–02–00284–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 28, 2003.

Grant Jones, Corpus Christi, for Appellant.

Carlos Valdez, Nueces County District Attorney, James D. Rosenkild, Assistant District Attorney, Corpus Christi, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Raymond Gonzalez, guilty of the offenses of murder and engaging in organized criminal activity, found he was a habitual felony offender, and assessed his punishment for each offense at life imprisonment. The trial court

ordered both sentences to run concurrently. The trial court has certified that this case "is not a plea-bargain case, and the defendant has the right of appeal." *See* Tex.R.App. P. 25.2(a)(2). In three issues, appellant contends: (1) there is insufficient evidence to corroborate the testimony of accomplice witness Rosendo Martinez; (2) the prosecutor's closing argument on punishment was prejudicial; and (3) the trial court erred in denying appellant's request to recuse the prosecutor's office. We affirm in part and reverse and remand in part.

## A. Background

On Saturday, May 13, 2000, Raul Pena was killed by members of an organization called "the Mexican Mafia," of which the victim was a member. At trial, the state relied on the testimony of Rosendo Martinez ("Rosendo") to prove appellant's complicity in the murder. Rosendo, a lieutenant in the Mexican Mafia and friend of the appellant, testified extensively regarding the course of events surrounding the murder of Raul Pena. Rosendo described the order given by his superiors to execute Pena. Chosen to carry out this task were Carlos Flores, Gabriel Martinez, Robert DeLaPaz, and appellant. Rosendo testified that these individuals were to take Pena on a sham errand outside of Corpus Christi. Pena would be told that the group was on its way to Robstown to collect some debts and because there might be trouble, they were going to stop and arm themselves along the way. Appellant was to drive his girlfriend's Ford Taurus and be accompanied by Flores, and Gabriel Martinez. DeLaPaz and Pena were to follow in a Cadillac.

These individuals drove to a field outside Corpus Christi where everyone but appellant exited the Taurus and DeLaPaz let Pena out of the Cadillac. The men went around to the trunk of the Taurus to get weapons. Gabriel Martinez then attempted to shoot Pena in the back of the head but his gun jammed. Pena temporarily escaped into the field. Flores and Gabriel Martinez quickly ran him down, shot him several times, and beat him with a tire iron. During these events, appellant remained in the Taurus, keeping watch. Gabriel Martinez then returned to the Taurus. They drove to another location and burned the Taurus to destroy any forensic evidence of the crime. DeLaPaz followed in the Cadillac. After the Taurus was destroyed, DeLaPaz drove everyone home.

Unbeknownst to the group, a witness observed the murder. The witness was driving past the field at the time the murder was taking place and called police. Corpus Christi police officers were dispatched to the scene where Pena lay, still alive. Before he died, Pena identified DeLaPaz as one of his attackers.

After he was driven to his apartment, appellant was picked up for questioning by the Corpus Christi Police Department. After he was released, appellant spoke with Rosendo by telephone and expressed concern that he might be arrested. Rosendo arranged for appellant to be transported to San Antonio by another member of the Mexican Mafia who was in town from San Antonio. Appellant fled to San Antonio the next day where he remained approximately one week, before returning. Appellant was arrested two days after he returned to Corpus Christi.

Throughout this time period, appellant was on parole and subject to electronic monitoring. He was allowed to leave his residence Monday through Friday to work between the hours of 6:30 a.m. and 6:00 p.m. If he wanted to leave his apartment at any other time, appellant needed pre-approval from his parole officer. On the day of the murder, appellant was out-of-range

of his monitoring system for several parts of the day. He had received permission from his parole officer to go to work that day, but he failed to show up for work.

Appellant's version of the events of May 13, 2000, differ substantially. Appellant said he was picked up early that morning by Flora Gonzalez, the mother of his two children, and her boyfriend. Together, they went back to Ms. Gonzalez's house where they had a family barbecue so appellant could spend time with his kids. Rosendo was to pick up the Taurus sometime during the day to have it repaired. After he learned from the police that the Taurus was involved in the crime, appellant became upset at Rosendo. Appellant fled town the next day because he feared an arrest warrant would be issued since he was not at his apartment during the time he was being questioned at the police station.

### B. CORROBORATION OF ACCOMPLICE WITNESS TESTIMONY

In his first issue, appellant contends the record evidence is insufficient to corroborate the testimony of accomplice witness Rosendo Martinez.

■ A conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense committed. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). In order to determine whether the accomplice testimony is corroborated, we eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect the appellant to the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim.App.1997); *Hernandez v. State*, 52 S.W.3d 268, 279 (Tex.App.-Corpus Christi 2001, no pet.). The accomplice witness testimony need not be corroborated on every element of the offense. *Vasquez v. State*,

56 S.W.3d 46, 48 (Tex.Crim.App.2001); *Hernandez*, 52 S.W.3d at 279. The non-accomplice testimony does not have to directly link the appellant to the crime, nor does it have to establish his guilt beyond a reasonable doubt; but rather, the non-accomplice evidence merely has to tend to connect appellant to the offense. *McDuff*, 939 S.W.2d at 613; *Hernandez*, 52 S.W.3d at 279. There must simply be some non-accomplice evidence which tends to connect appellant to the commission of the offense alleged in the indictment. *McDuff*, 939 S.W.2d at 613. All of the surrounding facts and circumstances may be looked to for corroboration, and the corroborative evidence may be circumstantial or direct. *Brown v. State*, 672 S.W.2d 487, 488 (Tex. Crim.App.1984).

■ In the instant case, appellant was an admitted member of the Mexican Mafia. Testimony from Raul Solis that appellant stabbed him in the eye and back for refusing to carry out a request from the Mexican Mafia is sufficient to establish that appellant had carried out criminal acts for the Mexican Mafia in the past. *See Hernandez*, 52 S.W.3d at 280 (where engaging in criminal activities for a gang may tend to connect one to the crime being prosecuted).

Furthermore, it was established that on the morning of May 13, 2000, appellant had control over the Ford Taurus used in the commission of the murder. Whether or not appellant was unaware that Rosendo picked up the car and used it for a criminal purpose, is mere speculation. What is undisputed, however, is that appellant was the last person to have control over the Taurus. His connection to and control over the vehicle that was used in the offense tends to connect him to the crime. *See Granger v. State*, 683 S.W.2d 387, 393 (Tex.Crim.App.1984).

Further connecting appellant to the murder was the fact that during the time the murder was occurring, appellant was absent from his apartment, in violation of a condition of his parole. Appellant claimed he was at a family barbecue spending quality time with his children. However, the persons able to confirm appellant's alibi, Ms. Gonzalez and her boyfriend, failed to do so. Appellant himself seemed vague and unsure of his story when initially questioned by police regarding his whereabouts during the time of the murder, elaborating no further than stating he was with "a girlfriend." Appellant's unexplained, unauthorized absence at the time of the murder further tends to connect him to the crime.

■ Appellant's actions after the murder further create inferences tending to connect him to the crime.[1] His admitted flight to San Antonio the day after the murder constitutes suspicious conduct and can corroborate the testimony of an accomplice. *See Cawley v. State,* 166 Tex. Crim. 37, 310 S.W.2d 340, 342 (1957). Appellant's excuse that he fled in fear of being arrested for a parole violation seems to contradict his testimony that he spent the day with his children. His parole officer testified that during the week he was gone, appellant did not establish personal contact. The only attempt made was by appellant's girlfriend, who said appellant was planning to give himself up. However, that never occurred. Thus, it is unlikely that appellant's only reason for remaining in hiding was fear that a warrant would be issued for violating his parole because he was questioned at the police

station, when appellant made no effort to contact his parole officer.

We conclude that appellant's acts before, during and after the commission of the murder tend to connect him to the crimes committed. Taken together, the evidence establishes that appellant engaged in criminal activities as a member of the Mexican Mafia, specifically, the planned murder of Raul Pena. The evidence tends to connect appellant to Pena's murder and the ongoing criminal activities of the Mexican Mafia. Accordingly, we hold there is sufficient non-accomplice evidence corroborating the testimony of accomplice witness Rosendo Martinez. Appellant's first issue is overruled.

### C. IMPROPER JURY ARGUMENT

In his second issue, appellant contends the prosecutor's closing arguments during the punishment phase of the trial constituted reversible error.

■ During the punishment phase of the trial, the prosecutor argued, in relevant part, as follows:

Prosecutor: Really, there is nothing to be proud of. Hitting somebody while they are not expecting it by surprise, only a sick mind would be proud of something like that. Getting in an airplane and flying it into a building when nobody is expecting it and killing thousands of people, nobody would be proud of that. Nobody should be proud of that. It's unexpected. It's horrible. That's what happened September 11th. Then you hear an audio tape of Osama bin Laden laughing about it and cackling, pretty much like

1. Acts committed after the offense is completed cannot make one a party to the offense. *Morrison v. State,* 608 S.W.2d 233, 235 (Tex. Crim.App.1980). However, acts committed before, during and after the offense may be

considered by the court in deciding whether a defendant participated in a common scheme for purposes of party liability. *Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim.App.1985).

we heard a little while ago, laughing and cackling about something-

Appellant's Counsel: Your Honor, I object to him comparing my client to Osama bin Laden. I request a mistrial.

The Court: Sustained. Overruled as to the mistrial.

Appellant's Counsel: I ask the Court to instruct the jury to disregard.

The Court: The Court is going to instruct the jury to disregard the last comments made by counsel.

Appellant's Counsel: Once again, I request a mistrial.

The Court: Overruled. Denied.

Prosecutor: Whatever you call it, whether it's Mexican Mafia or al-Qaida, it's all the same; they are trying to destroy this country a little at a time either by killing thousands of people or killing one at a time.

Appellant's Counsel: Once again, Your Honor, I object to the prosecutor comparing this case to the events in New York on September 11th, and I ask for a mistrial.

The Court: Let's move on from that line of questioning. That motion for mistrial is denied. Not the line of questioning, line of comments.

The four identified areas of acceptable jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Rocha v. State,* 16 S.W.3d 1, 21 (Tex.Crim.App.2000); *Stell v. State,* 711 S.W.2d 746, 748 (Tex.App.-Corpus Christi 1986, no pet.). It has long been established that a prosecutor cannot use closing argument to place matters before the jury that are outside the record and prejudicial to the accused. *Everett v. State,* 707 S.W.2d 638, 641 (Tex.Crim.App.1986). Arguments referencing matters that are not in evidence and may not be inferred from the evidence are usually, "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Borjan v. State,* 787 S.W.2d 53, 57 (Tex. Crim.App.1990). In examining challenges to jury argument, an appellate court considers the remark in the context in which it appears. *Gaddis v. State,* 753 S.W.2d 396, 396 (Tex.Crim.App.1988).

It is well-settled that even if a prosecutor's jury argument is improper, an instruction by the trial judge to the jury to disregard the improper argument is usually sufficient to cure the error. *Melton v. State,* 713 S.W.2d 107, 114 (Tex.Crim.App. 1986); *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim.App.1985). Even when arguments exceed the boundaries of these permissible groups, they will not constitute reversible error unless they are extreme or manifestly improper, violate a mandatory statute, or inject new facts harmful to the accused into the trial proceeding. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App.2000); *Reed v. State,* 991 S.W.2d 354, 362–63 (Tex.App.-Corpus Christi 1999, pet. ref'd). Reversible error occurs when a statement is so inflammatory that its prejudicial effect cannot reasonably be removed by such admonition. *McKay v. State,* 707 S.W.2d 23, 33 (Tex. Crim.App.1985); *Blansett v. State,* 556 S.W.2d 322, 328 (Tex.Crim.App.1977). The improper remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Wesbrook,* 29 S.W.3d at 115.

Here, the prosecutor made a direct comparison between the accused and a present-day notorious criminal whose vile and dastardly acts were undoubtedly still fresh in the minds of the jurors. Comparing an accused or his acts

to those of a notorious criminal is considered an improper and erroneous interjection of facts not in the record that is harmful to the accused. *Stell,* 711 S.W.2d at 748 (comparing the accused to Lee Harvey Oswald); *Brown v. State,* 978 S.W.2d 708, 714 (Tex.App.-Amarillo 1998, pet. ref'd) (comparing accused to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy). While invoking horrific memories of the events of September 11 in the minds of the jurors, the prosecutor's argument effectively asked the jury to punish appellant as they would punish Osama bin Laden. We see no plausible reason for the harmful remarks other than to deprive appellant of a fair and impartial trial. *See Wesbrook,* 29 S.W.3d at 115. We conclude that such an improper interjection of facts outside the record, which were harmful to the accused, so inflamed the jury that its prejudicial effect could not reasonably be removed by the trial court's admonition. *See McKay,* 707 S.W.2d at 33; *Blansett,* 556 S.W.2d at 328. Accordingly, we hold that the prosecutor's improper comparison between appellant and Osama bin Laden was improper and the trial court's admonition could not cure the error.

■ After finding that argument is improper, this Court must conduct a harm analysis. *See Wilson v. State,* 938 S.W.2d 57, 61 (Tex.Crim.App.1996). To measure the harm resulting from improper jury argument, we employ Rule 44.2(b). That rule provides that any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). A substantial right is affected when an error has a substantial, injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

■ In determining harm under this standard in improper argument cases,

the appellate court should consider the following factors: (1) severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct. *Martinez v. State,* 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998). The prejudicial effect of the prosecutor's improper remarks in the present case had more than a nominal effect upon the jury. Because the jury assessed two sentences of life imprisonment, we cannot say that the prosecutor's remarks had little impact on the jury's verdict.

■ The State's comparison of appellant with Osama bin Laden and al-Qaida with the Mexican Mafia appears to be nothing more than a blatant attempt to deprive appellant of a fair and impartial trial. We see no logical reason for the State to compare the Mexican Mafia with al-Qaida, especially after the trial court had disapproved of the prosecutor's comparison of appellant with Osama bin Laden. We consider it highly likely that Osama bin Laden and al-Qaida were chosen by the prosecutor because of the likelihood that such references would stir up anger and resentment in the hearts of jury, especially considering the fact that appellant's trial occurred seven months after September 11th. When a jury is entrusted with deciding the severity of punishment for an accused, it should be allowed to do so without allusions to the most evil and notorious criminals of the time.

Second, as we have already discussed, the trial court's curative instruction could not alleviate the argument's prejudicial effect. We recognize that the prosecution abandoned the line of comments after the second analogy was objected to and the prosecutor was instructed to move away from such comments by the trial judge. Yet there was no time for the harmful

impact of these statements to be attenuated over the course of the trial or sentencing hearing. *See Reed,* 991 S.W.2d at 365 (improper remarks made immediately before jury deliberation); *Brown,* 978 S.W.2d at 715 (same).

We cannot say with absolute certainty what the jury's verdict on punishment would have been absent the improper remarks. However, the jury's assessment of the maximum sentence for each offense charged militates toward a finding of harm. Because we cannot say with confidence that the error stemming from the improper argument had no influence, or only a slight influence, on the punishment assessed, we hold that the prosecution's argument was improper and harmful. Appellant's second issue is sustained.

### D.   Recusal of Prosecutor's Office

In his third issue, appellant complains the trial court erred in denying his request to recuse the prosecutor's office. Appellant contends the trial court should have recused the entire prosecutor's office because the district attorney made a public statement of support for a member of his office, which allegedly compromised his impartiality and indicated his personal bias against appellant.

There are times when a prosecutor must recuse himself from a prosecution. If there is a conflict of interest on the part of the prosecutor's office, the responsibility of recusal lies with the State, not the trial court. *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Crim.App. 1990). Only when a conflict of interest rises to the level of a due process violation can the trial court disqualify a district attorney or his staff. *State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 927 (Tex.Crim.App. 1994).

During the recess between the guilt-innocence phase and the punishment phase of the trial, appellant physically assaulted the assistant district attorney prosecuting this case. The elected District Attorney, Carlos Valdez, replaced the assaulted prosecutor and personally argued the punishment phase of the trial. Appellant complains of a statement that Valdez made to the press after the courtroom attack. Valdez stated: "[a]ny attack on anybody in my office or any of the personnel in my office, I consider a personal attack against me." Appellant contends this statement warrants the requested recusal.

Appellant has presented this Court with no authority suggesting that such a statement rises to the level of a due process violation. No more can be read into the comment than a district attorney showing solidarity and support for his staff.

Moreover, appellant should not be allowed to create a conflict during the course of the trial, and then on appeal complain of an error which he himself induced. *See Prystash v. State,* 3 S.W.3d 522, 531 (Tex. Crim.App.1999); *Pedraza v. State,* 69 S.W.3d 220, 224 n. 3 (Tex.App.-Corpus Christi 2001, no pet.). Appellant's third issue is overruled.

We affirm the trial court's judgment finding appellant guilty of the offenses of murder and engaging in organized criminal activity. We reverse both sentences of life imprisonment and remand the case to the trial court for a new trial on punishment. *See* Tex.Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.2003).