

# NUMBER 13-09-515-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLES ORR,                                                 **Appellant,**

**v.**

THE STATE OF TEXAS,                                      **Appellee.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Vela, and Perkes
### Memorandum Opinion by Justice Vela

A jury found appellant, Charles Orr, guilty of murder, s*ee* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2003), and assessed punishment at life imprisonment, plus a $10,000 fine. By a single issue, appellant argues the trial court erred by denying his motion for mistrial after the prosecutor made an improper comment during punishment-phase closing argument. We affirm.

## I. PUNISHMENT HEARING

The relevant evidence pertaining to the trial court's denial of the mistrial is as follows: Terry Dunning and appellant were members of the "Arian Brotherhood" while incarcerated in a Texas state jail facility. When asked how he knew appellant was an Arian Brotherhood member, Dunning said, "[H]e [appellant] told me." When the prosecutor asked Dunning if he knew "of any tattoos or markings that Arian Brotherhood members have or carry," he said, "Lightning bolt, swastikas." On cross-examination, Dunning testified appellant "has lightning bolts on his arm."

Officer Paul Lisowski, who worked in the gang unit of the Corpus Christi Police Department, testified that "[m]ost gangs use tattoos as a symbol of who they are or recognition. . . . Arian Brotherhood of Texas, A. B., they use lightning bolts. They also use other symbols on them as well." He stated the Arian Brotherhood is a "white supremacist group. They believe that the Arian race is the supreme race . . . ." When asked about the significance of the lightning bolt, he said, "The lightning bolt originates back to World War II. The Germans or the Nazis used it. . . . It was adopted by Arians in this aspect because they hated all of the races. . . ." He further stated that "the lightning bolt . . . was . . . used . . . for the SS, the Germans, their elite group, and it just kind of went from there onto the Arian Brotherhood and Arian white supremacists."

Officer Lisowski said appellant had some Celtic or Viking-related tattoos on his chest. Above his left hand, appellant had a "little tombstone, . . . and it has 'Rest in Peace' with a little like 'SS' inside it." When the prosecutor asked him, "And the lightning bolt is on the left wrist?", he said, "I believe so." He said the Viking is what most of the

2

Arian supremacists use. On cross-examination, Officer Lisowski testified he did not know whether appellant was a gang member.

During the punishment phase, defense counsel introduced into evidence appellant's records from the Texas Department of Criminal Justice-Correctional Institutions Division, Classification and Records. These records, which are marked as defendant's exhibit 63 in the appellate record, show that appellant was received into the Texas prison system on July 10, 2007. Under a section entitled "Marks and Scars (SMT)," the records state, in relevant part: "TAT[1] L ARM, tat swastika, devils, skull, lightning bolts, 'swp', left arm (sleeve)[.]" On the next line, the records state: "TAT R ARM, tat swastika, fem fig, lightning blts, 'swp', rt arm (sleeve)[.]"

## II. DISCUSSION

In his sole issue, appellant contends the trial court erred by denying his motion for mistrial after the prosecutor made an alleged improper comment during punishment-phase closing argument.

### 1. Standard of Review

"In reviewing a trial court's ruling on a motion for mistrial, an appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "'Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.'" *Id.* (quoting *Hawkings v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). "The standard of review is abuse of discretion." *Id.*

---

[1] "Tat" is an abbreviation for tattoo.

3

**2. Analysis**

During the State's punishment-phase closing argument, the prosecutor made the following comments to the jury: "I want you to look at Defendant's Exhibit Number 63 very carefully. It tells you here he [appellant] has swastikas on him. Maybe he's not an Arian Brother, maybe the evidence shows he's a Nazi, but I want you to take your time and look at this." At that point, defense counsel objected that "[t]here's never been any testimony that someone is a Nazi." The trial court overruled the objection. The trial court also overruled defense counsel's requests for an instruction to disregard and request for a mistrial.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). "'Logical deductions from evidence do not permit within the rule logical deductions from non-evidence.'" *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986) (quoting *Berryhill v. State*, 501 S.W.2d 86 (Tex. Crim. App. 1973)). The court of criminal appeals "has long held that reference to facts that are neither in evidence, nor inferable from the evidence is improper." *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). "[A] prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use the jury argument to get before the jury either directly or indirectly, evidence which is outside the record." *Id.* In examining challenges

4

to jury argument, we consider the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

In this case, when considering the remark in the context in which it appears, the prosecutor neither called appellant a Nazi nor compared him or his conduct to that of the Nazis or a notorious criminal. "Comparing an accused or his acts to those of a notorious criminal is considered an improper and erroneous interjection of facts not in the record that is harmful to the accused." *Gonzalez v. State*, 115 S.W.3d 278, 285 (Tex. App.—Corpus Christi 2003, pet. ref'd) (holding that prosecutor's improper comparison between accused and Osama bin Laden was improper) (citing *Stell v. State*, 711 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1986, no pet.) (comparing accused to Lee Harvey Oswald)); *Brown v. State*, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref'd) (comparing accused to Jeffrey Dahmer, John Wayne Gacey, and Ted Bundy). Here, the prosecutor told the jurors that defendant's exhibit 63 "tells you here he has swastikas on him." Next, the prosecutor argued, "Maybe he's not an Arian Brother, maybe the evidence shows he's a Nazi. . . ." Indeed, defendant's exhibit 63 showed appellant had swastikas on his arms. The swastika is the recognized emblem used by the Nazis. During closing argument, "a statement of matters within the realm of common knowledge" is proper. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). Thus, the prosecuting attorney's remarks constituted a reasonable, fair, and legitimate inference from the facts in evidence.

Accordingly, we hold that the trial court did not err by denying appellant's motion for mistrial. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (stating

that summation of, and reasonable deduction from, the evidence are proper areas of jury argument).   We hold the trial court did not abuse its discretion by denying the motion for mistrial.   The sole issue for review is overruled.

### III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
17th day of November, 2011.