ACCEPTED
01-14-00862-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/22/2015 4:54:32 PM
CHRISTOPHER PRINE
CLERK

01-14-00862-CR

In the First Court of Appeals of Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/22/2015 4:54:32 PM

CHRISTOPHER A. PRINE
Clerk

Andre Demont Thompson,
Appellant

v.

The State of Texas,
Appellee

On Appeal from Cause 1364962
In the 178th District Court of Harris County

Brief for Appellant

Oral Argument Requested

Franklin Bynum
Texas Bar Number 24069451
fgb@lawfgb.com

Bynum Law Office PLLC
2814 Hamilton Street
Houston, Texas 77002
(713) 343-8844

Counsel for Appellant

## IDENTITY OF PARTIES AND COUNSEL

Appellant

Andre Demont Thompson
TDCJ Number 01959294
Nathaniel J. Neal Unit
9055 Spur 591
Amarillo, Texas 79107

Defense Counsel at Trial

Jules Johnson
Eric Davis
Harris County Public Defenders
1201 Franklin Street, 13th Floor
Houston, Texas 77002

Prosecutor at Trial

David Abrams
*Assistant District Attorney*
Harris County District Attorney's Office
1201 Franklin Street, 6th Floor
Houston, Texas 77002

Judge Presiding

The Honorable David Mendoza
178th District Court
1201 Franklin Street, 18th Floor
Houston, Texas 77002

Appellant's Counsel

Franklin Bynum
Bynum Law Office PLLC
2814 Hamilton Street
Houston, Texas 77004

## Table of Contents

Identity of Parties and Counsel ............................................................. 2

Table of Contents ............................................................................. 3

Index of Authorities......................................................................... 4

Statement of the Case...................................................................... 5

Issue ................................................................................................ 5

Statement of Facts........................................................................... 5

Summary of the Argument ............................................................... 9

Argument ......................................................................................... 9

   **Issue:** A prosecutor, during punishment argument, may not call the defendant a wild animal or a monster. Did the trial court commit error allowing the State, repeatedly over defense objection, to compare the defendant to a zoo animal and the homicidal shark from *Jaws*? ............... 9

Prayer ............................................................................................. 12

Certificate of Compliance ............................................................... 13

Certificate of Service ...................................................................... 13

## Index of Authorities

### Cases

*Brown v. State*, 978 S.W.2d 708 (Tex. App.—Amarillo 1998, pet. ref'd)................10

*Gonzalez v. State*, 115 S.W.3d 278 (Tex. App.—Corpus Christi 2003, pet. ref'd)...10

*Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000) ..................................................9

*Stell v. State*, 711 S.W.2d 746 (Tex. App.—Corpus Christi 1986, no pet.) ............... 11

*Thompson v. State*, 729 S.W.2d 132 (Tex. App.—Beaumont 1987, pet. ref'd) ......... 11

*Thompson v. State*, 89 S.W.3d 843 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ................................................................................................................11, 12

*Williams v. State*, 417 S.W.3d 162 (Tex. App.—Houston [1st Dist.] 2013) .............. 11

## Statement of the Case

A Harris County grand jury indicted Andre Demont Thompson on January 26, 2013 for murder.[1] Thompson pleaded not guilty and the case proceeded to jury trial on October 1, 2014[2] On October 7, 2014, the judge found Mr. Thompson guilty as charged in the indictment[3] and the next day imposed a sentence of thirty years in prison.[4] Mr. Thompson gave notice of appeal on the date he was sentenced.[5]

## Issue

> A prosecutor, during punishment argument, may not call the defendant a wild animal or a monster. Did the trial court commit error allowing the State, repeatedly over defense objection, to compare the defendant to a zoo animal and the homicidal shark from *Jaws*?

## Statement of Facts

On October 5, 2013, Jackie Bergeron—the State's star witness—and the complainant were sitting around an apartment complex in Houston waiting for a ride, having just committed an aggravated robbery with a firearm earlier that day.[6]

---

[1] (C.R. at 28)
[2] (2 R.R. at 207-08)
[3] (5 R.R. at 117)
[4] (6 R.R. at 38-42)
[5] (C.R. at 113)
[6] (3 R.R. at 164-66; 4 R.R. at 48)

Bergeron said he saw Andre Thompson in the playground area of the apartment complex talking to people, hanging out.[7] Bergeron said that Thompson walked up to him and the complainant with a gun visibly tucked into his pants.[8] Bergeron and the complainant started cursing at Thompson, and calling names.[9] The complainant said to Thompson: "we're not worried about your gun" because "we got guns too."[10]

The confrontation continued until, as Bergeron put it, "the next thing I know, gunshots came."[11] Bergeron ran around the block, thinking the complainant was running, too.[12] Bergeron circled back to the scene, where he found the complainant's body.[13] Bergeron took the gun off the complainant's body for himself, "because guns are hard to come by," and ran.[14]

A resident of the apartment complex had heard "three or four" shots before looking out the window and seeing a man chasing another man across the courtyard.[15] He saw one of the men fall, and the other

---

[7] (3 R.R. at 170)
[8] (3 R.R. at 175)
[9] (3 R.R. at 176)
[10] (3 R.R. at 177)
[11] (3 R.R. at 182)
[12] (3 R.R. at 183)
[13] (3 R.R. at 186)
[14] (3 R.R. at 187)
[15] (4 R.R. at 94, 97)

shot him.[16] The resident testified that he was not sure if the person who he saw shoot was the defendant in the courtroom or not.[17]

The State called a DNA analyst that testified that she tested "a backpack, old T-shirts, a phone, a hat, a bicycle, swabs" from the scene and "Andre Thompson was excluded as a contributor to any item."[18] The analyst said that she was not asked to test any shell casings, so she did not test any.[19]

Thompson raised an alibi defense. The mother of his children testified that she, the children, and Thompson all went to Galveston that day, and that he could not have been at the apartment complex.[20]

At closing argument on punishment, the prosecutor on several occasions called Mr. Thompson a wild animal: first a lion, then a man-eating shark.

> I don't know if any of you saw that it was in a video back on CNN […] where it was a mother, who had her little baby, and she was holding—she was at the zoo—and she holding this baby near the lion cage.
>
> And there was a clear plastic barrier between this baby and the lion, and the baby is sitting there dancing, moving around, and the lion

---

[16] (4 R.R. at 97)
[17] (4 R.R. at 109)
[18] (4 R.R. at 132)
[19] (4 R.R. at 145)
[20] (5 R.R. at 60)

comes out. It's gnawing right there. Everybody thinks, oh, it's hilarious. It's cute. It's so great mom's filming it, sends it to CNN, everybody watches it. But was that really cute? What would have happened if that glass barrier was not there? That baby is a goner. Because the motivation of a lion, a lion is a killer. A lion is a predator. That lion would have eaten that baby and nothing would have changed.

The defendant is a killer. [21]

The prosecutor continued to invoke the classic film *Jaws*.

> MR. ABRAMS: Have you seen the movie, Jaws? I mean, for those who haven't seen it, it's a about a man-eating shark, right?
>
> This man is a shark. We have to decide if we want to let him back in the waters in our community.
>
> MR. JOHNSON: Objection, Your Honor; improper argument.
>
> THE COURT: It's overruled.
>
> MR. ABRAMS: Do we want to remove that clear plastic barrier between the lion and the baby?
>
> Do we want to do that?
>
> MR. JOHNSON: Objection, Your Honor; improper, calls for law enforcement.
>
> THE COURT: It's overruled.

[21] (6 R.R. at 32)

MR. ABRAMS: That's your decision. You get to decide because he'll get out eventually. He will. You get to decide when you feel comfortable having this predator, this killer back with our families on our streets. [22]

## Summary of the Argument

The prosecutor repeatedly referred to the defendant as a monster or a wild animal throughout his closing, violating strong precedent limiting prosecutors' arguments, and forbidding name calling.

## Argument

**Issue:** A prosecutor, during punishment argument, may not call the defendant a wild animal or a monster. Did the trial court commit error allowing the State, repeatedly over defense objection, to compare the defendant to a zoo animal and the homicidal shark from *Jaws*?

The four acceptable areas of jury argument are (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement.[23] Appellate courts across the state have repeatedly disapproved of prosecutors who make inflammatory comparisons outside the record.

---

[22] (6 R.R. at 34-36)
[23] *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000).

A prosecutor may not compare a defendant to villains from media like Osama bin Laden, al-Qaida, and the Mexican Mafia.[24] The *Gonzalez* court found that any name-calling was outside the record, and that the Court of Criminal Appeals "has long been established that a prosecutor cannot use closing argument to place matters before the jury that are outside the record and prejudicial to the accused."[25] "Arguments referencing matters that are not in evidence and may not be inferred from the evidence are usually, 'designed to arouse the passion and prejudices of the jury and as such are highly inappropriate.'"[26] The *Gonzalez* court found that even though a curative instruction was given, comparing the defendant to infamous figures was harmful, reversible error.[27]

In another case finding reversible error, the prosecutor compared the defendant to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy.[28] Courts have repeatedly found comparisons to notorious figures to be unfair and improper, and often grounds for reversal regardless of whether a curative instruction was given; a comparison to Lee Harvey

---

[24] *Gonzalez v. State*, 115 S.W.3d 278, 285 (Tex. App.—Corpus Christi 2003, pet. ref'd).
[25] *Id.* at 284 (citing *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986)).
[26] *Id.* (quoting *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990)).
[27] *Id.* at 285-86.
[28] *Brown v. State*, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref'd).

Oswald was "highly improper and error."[29] In another case, a comparison of the defendant to a venomous spider, along with a reference to a spider tattoo on the defendant's neck, was reversible.[30]

This prosecutors' office has a history of making improper jury arguments.[31]

> Improper arguments, especially those involving unsubstantiated accusations against opposing counsel, confirm for real jurors in real Texas courtrooms the worst caricatures of lawyers and our justice system that television and movies have to offer. Ultimately, trial judges have the duty to enforce "law and order, as well as dignity, in their courtrooms."[32]

In this case, the prosecutor first described Andre Thompson as a tiger who wanted to eat a young child at the zoo on cable television. This is plainly improper. A cable-television segment is outside the record, as is the caricature of a vicious animal contained within that segment. The horror of a child being eaten alive at the zoo has no place in any of the four permissible categories of argument.

The comparison to *Jaws*, a bit less esoteric than a cable-news segment, is especially inflammatory. Villains and terrifying creatures take

---

[29] *Stell v. State*, 711 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1986, no pet.).
[30] *Thompson v. State*, 729 S.W.2d 132, 133 (Tex. App.—Beaumont 1987, pet. ref'd).
[31] *See Williams v. State*, 417 S.W.3d 162, 174 (Tex. App.—Houston [1st Dist.] 2013), reh'g overruled (Jan. 21, 2014), petition for discretionary review refused (May 7, 2014); *see also Thompson v. State*, 89 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).
[32] *Id.* at 193 (Jennings, J., concurring).

on many forms; the inflammatory caricature of a terrorist is just the same as the inflammatory caricature of the homicidal shark or the tiger at the zoo.

The error here is harmful. As noted above, even with a sustained objection and a curative instruction as in *Gonzalez*, these kinds of improper jury arguments are harmful. In this case, the trial judge neither sustained the objection nor gave a curative instruction, doing nothing to mitigate any harm caused by the improper argument. The error in this case was harmful. Mr. Thompson deserves a punishment phase free of name calling and improper argument.

As Justice Jennings noted, the system pays particular attention to error that reinforces the worst ideas of the system itself.[33] We deserve better from prosecutors than cable-news scaremongering.

### Prayer

Andre Demont Thompson prays that this Honorable Court reverse the judgment of conviction and remand for a new trial, or in the alternative for a new trial on punishment.

---

[33] *Id.*

## CERTIFICATE OF COMPLIANCE

The word-processing software used to write this brief reports its length as 1806 words before subtracting for any of the contents that may be excluded under Rule 9.4(i)(1).

## CERTIFICATE OF SERVICE

I provided this brief to the Harris County District Attorney by electronic service to curry_alan@dao.hctx.net simultaneously with the electronic filing of this document.

Respectfully,

/s/ Franklin Bynum

Bynum Law Office PLLC
2814 Hamilton Street
Houston, Texas 77002
(713) 343-8844

Franklin Bynum
Texas Bar Number 24069451
fgb@lawfgb.com