**Opinion issued December 17, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00862-CR

———————————

**ANDRE DEMONT THOMPSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1364962**

---

## MEMORANDUM OPINION

A jury convicted appellant, Andre Demont Thompson, of murder, and the trial court assessed punishment at 30 years' confinement. In a single point of error, appellant contends that the trial court erred when it allowed the State to make

improper arguments comparing appellant to dangerous animals during the punishment stage of the case. We affirm.

## BACKGROUND

On the evening of October 5, 2012, Jackie Bergeron and the complainant, 15-year-old Thomas Williams, Jr., were in the Green Arbor apartment complex in Houston waiting for a ride. After they entered the complex they saw appellant sitting near the apartment playground. Bergeron and appellant had previously been in fistfight with one another. Appellant approached Bergeron and Williams and showed them a gun tucked into his pants. Williams said, "We ain't worried about your guns. We got guns, too." Williams simultaneously indicated that he too was carrying a weapon. A verbal confrontation ensued. As the verbal confrontation escalated, appellant grabbed the gun tucked into his pants, at which point the Williams and Bergeron turned to run. As Bergeron ran, he heard gunshots and subsequently saw Williams fall. Bergeron continued to run furiously for about 30 seconds, but eventually came back to the site of the shooting and confirmed that Williams was dead.

A jury convicted appellant of murder. During the sentencing, the prosecutor referred to appellant in the following manner:

> [Prosecutor]: I don't know if any of you saw that[;] it was in a video back on CNN . . . where it was a mother, who had her little baby, and she was holding—she was at the zoo—and she [was] holding this baby near the lion cage. And there was a clear plastic barrier between

2

the baby and the lion, and the baby is sitting there dancing, moving around, and the lion comes out. It's gnawing right there. Everybody thinks, oh, it's hilarious. It's cute. It's so great mom's filming it, sends it to CNN, everybody watches it. But was that really cute? What would have happened if the glass barrier was not there? That baby is a goner. Because the motivation of a lion, a lion is a killer. A lion is a predator. That lion would have eaten that baby and nothing would have changed.

The Defendant is a killer. He is a predator.

* * * *

[Prosecutor]: Have you guys seen the movie *Jaws*?

[Defense Counsel]: Objection; improper argument.

[Trial Court]: Overruled.

[Prosecutor]: Have you ever seen the movie, *Jaws*? I mean, for those who haven't seen it, it's a [sic] about a man-eating shark, right? And there is a scene in which there [sic] on a dock, all right.

And Chief Brody, he's one of the main characters in the movie. And they're on this dock, and he has this gigantic shark hanging right there and he's standing there. He's feeling good. He's pumping his chest. I did a great job. I caught this shark, and there's a group of people around him. They're pumping their chests. Great job, Chief.

And then there's a woman that comes up to him. She's dressed in black. She's obviously mourning, slaps him across the fact and says, "Why did you let people go in the water if you knew there was a shark." And she walks away.

Now everyone else gets around and says, "Don't worry, you did a good job. You caught that shark. Don't worry. Don't listen to her. It's not your fault."

And he says, "No, it is."

3

[Appellant] is a shark. We have to decide if we want to let him back in the water of our community.

[Defense Counsel]: Objection, Your Honor, improper argument.

[Trial Court]: It's overruled.

[Prosecutor]: Do we want to remove that clear plastic barrier between the lion and the baby? Do we want to do that?

[Defense Counsel]: Objection, Your Honor; improper, calls for law enforcement.

[Trial Court]: It's overruled.

[Prosecutor]: That's your decision. You get to decide because he'll get out eventually. He will. You get to decide when you feel comfortable having this predator, this killer back with our families on our streets.

For the sake of all of us, for the sake of your community, I ask that you send him away for as long as you feel comfortable with. I ask that [it] be a long time. I ask that you refer to either the first or second page of your verdict sheets, and you give him a number of years that you feel comfortable telling your family that you kept a murderer out of our waters.

## JURY ARGUMENT

In a single point of error, appellant claims that the trial court erred when it overruled his objection to prosecutor's closing jury argument during the punishment phase of trial, in which the prosecutor characterized appellant as an "animal," specifically a "lion" and a "man-eating shark."

4

*Standard of Review and Applicable Law*

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts to the case, or were so extreme and manifestly improper that they deprived appellant of a fair and impartial trial. *Brown*, 270 S.W.3d at 573 n.3; *McGee*, 774 S.W.2d at 238. "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown,* 270 S.W.3d at 573 n.3. "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v.*

*Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1870 (1974)).

*Analysis*

A party may not use closing arguments to insert before the jury matters that are prejudicial to the accused and outside the record. *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986); *Gonzalez v. State*, 115 S.W.3d 278, 284 (Tex. App.—Corpus Christi-Edinburg 2003, pet. ref'd). In *Gonzalez*, a case relied on by appellant, the defendant was convicted of murder and participation in organized criminal activity. *Id.* On appeal, Gonzalez claimed that the court committed reversible error when it denied a mistrial over the defense's objections after prosecution compared Gonzalez to Osama Bin Laden and the "Mexican Mafia," of which Gonzalez was a member, to Al-Qaida. *Id.* at 284 ("Whatever you call it, whether it's Mexican Mafia or al-Qaida, it's all the same; they are trying to destroy this country a little at a time either by killing thousands of people or killing one at a time."). The appeals court reversed the trial court, holding that the defendant was harmed by the prosecutor's closing argument, which compared the defendant to Bin Laden at a time when the events of September 11 were fresh in the collective minds of the jurors. *Id.* at 284–85. Other courts have held that it is improper for a prosecutor to compare the accused to Jeffrey Dahmer, John Wayne Gacy and Ted Bundy, infamous serial killers who have left an indelible impression in the minds

6

of the American psyche. *Brown v. State*, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref'd). A reference comparing the defendant to Lee Harvey Oswald, the assassin of John F. Kennedy, has also been held to be improper and harmful error. *See Stell v. State*, 711 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1986, no pet.).

Relying on the cases above, appellant claims that the "inflammatory caricature of a terrorist is just the same as the inflammatory caricature of the homicidal shark or the tiger [sic] at the zoo." The State, on the other hand, argues that the repeated reference to the defendant as an animal, or a predator, is a "reasonable deduction" from the evidence or a proper "plea for enforcement." The State also contends that, even if the argument is improper, it is not harmful. We agree with the State that the argument was a plea for law enforcement.

Texas law has made it clear that context is highly important when deciding whether a closing argument is proper or improper. *See e.g. Burns v. State*, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977) (holding that a reference to the accused as an animal is not improper when the defendant had brutally tortured and murdered a 58-year-old man); *Belton v. State*, 900 S.W.2d 886, 898 (Tex. App.—El Paso 1995, pet. ref'd) (reference to defendant as an animal not improper when the facts showed the accused broke into a family's home, terrorized them, and ultimately shot three of them dead). But when an argument serves no legitimate

purpose, Texas courts have held that reference to the accused as an animal, in that context, is improper. *See Tompkins v. State,* 774 S.W.2d 195, 217–18 (Tex. Crim. App. 1987). Thus, we consider the context in which the State's argument was made.

Here, the closing argument was during the punishment phase, appellant had been found guilty of murder, and the task for the jury was to decide the appropriate sentence. When a prosecutor argues during the sentencing phase of a trial, she may often seek to place a moral responsibility upon jurors regarding the fate of the accused. *See, e.g.*, *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000). Such an argument is a proper plea for law enforcement. *Id.* Here, the prosecutor's reference to a lion behind glass at a zoo and the shark in "Jaws" were clearly made as an attempt to place a moral responsibility on the jury to protect the community by giving appellant a lengthy sentence. The statements "[w]e have to decide if we want to let him back in the water of our community," and "you give him a number of years that you feel comfortable telling your family that you kept a murderer out of our waters," and the questions "[d]o we want to remove that clear plastic barrier between the lion and the baby? Do we want to do that?" were part of the prosecutor's exhortation for the jury to give appellant a lengthy sentence so as to keep the community safe. The use of the analogy of appellant as a lion that must remain caged and a shark that must be kept out of our oceans are, in the context of

this case, proper as pleas for law enforcement. The State is entitled to use such analogies in making a proper jury argument. *See Broussard v. State*, 910 S.W.2d 952, 959 (Tex. Crim. App. 1995).

## CONCLUSION

We overrule appellant's sole point of error and affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b)