**Opinion issued March 10, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00215-CR

————————————

**JOSEPH TATE BAILEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1411201**

---

## MEMORANDUM OPINION

Joseph Tate Bailey pleaded not guilty to murder, having been twice previously convicted of felony possession of a controlled substance. At the punishment hearing, the jury found enhancement paragraphs for both offenses true and assessed his punishment at 35 years' imprisonment. On appeal, he contends

that (1) the trial court erred by failing to give an accomplice witness instruction; (2) the evidence is legally insufficient to convict him; and (3) the trial court should have sustained his objection to witness testimony that he had been "in and out of prison." He further complains that (4) he was prevented from hearing a witness's prior recorded statement; (5) the court should not have read a portion of the testimony back to the jury during its deliberations; and (6) the trial court erred by admitting testimony of extraneous crimes by fellow gang members. Finally, he complains that (7) the State improperly commented on his failure to testify; (8) the State made improper jury arguments; (9) the enhancement paragraphs were not read at the beginning of the punishment phase; and (10) he received ineffective assistance of counsel. Finding no reversible error, we affirm.

## BACKGROUND

On September 25, 2012, Sergio Saldana, the complainant, visited his drug dealer's house in Baytown to pick up some heroin. Michael Hourshad, who owned the house, but was not Saldana's dealer, let Saldana into the home. Before Saldana's arrival, Hourshad had heard that Saldana wanted to rob him. He called Bailey's girlfriend, Tara Brown, to ask whether he should be worried. Brown responded that she didn't think so, but she offered to come over and bring Bailey. Brown later texted Hourshad to ask whether Saldana knew that she and Bailey were coming to the house. She also asked whether Saldana was a "real big guy."

2

When Saldana arrived, Hourshad noticed that Saldana was in withdrawal from heroin. Hourshad let Saldana stay for a while to inject heroin. Saldana and Hourshad talked and smoked methamphetamines. When Brown and Bailey arrived, they conversed for a while with Hourshad and Saldana. Saldana mentioned that he needed a ride home, and Bailey and Brown offered him one. Bailey stepped out to make a phone call. Shortly thereafter, Brown and Bailey left.

Meanwhile, Vernon Brooks was playing video poker at a game room outside Baytown with his girlfriend Stella Preece, and with Stella's sister Rose Preece and Michael Kazee. Bailey called Brooks. Brooks, Kazee, Stella, and Rose got into Brooks's truck and headed toward Baytown to meet Bailey and Brown, but they ran out of gas on the way. Brown and Bailey picked up Brooks in their car. The three went to a nearby gas station, where they filled up a gas can. They returned to Brooks's truck and poured the gas into the tank. Brooks, Bailey, Brown, Kazee, and Stella returned in the two vehicles to Hourshad's house. Before arriving at Hourshad's, they dropped off Rose Preece at a friend's house. After resuming their trip to Hourshad's, Brooks and Bailey conversed by speakerphone. Brooks became angry. Brown messaged Hourshad to ask if Saldana had injected the heroin yet, and if he was sitting on the couch. She told Hourshad to leave the door unlocked and to stay away from the door.

Upon arriving, Bailey, Brooks, and Kazee got out of their vehicles and entered Hourshad's house. Stella remained in a car outside. According to Kazee, Bailey carried a black semiautomatic pistol and Brooks retrieved a .38 caliber revolver from a toolbox in the bed of his truck. The witnesses disagreed as to whether Kazee was armed, but Hourshad later testified that he saw three pistols. Bailey, Brooks, and Kazee entered the house and headed for Saldana, one of them yelling "Get down, motherfucker." Hourshad heard punching noises, followed by gunshots. According to Kazee, Brooks pistol-whipped Saldana and kicked him repeatedly. Bailey and Brooks each fired a shot at Saldana, and then the group left. After waiting to make sure that the attackers were gone, Hourshad called 911. Saldana was pronounced dead at the scene; at autopsy, he was found to have died from a single gunshot wound to the chest.

When they left, the attackers split up into the same groups in which they had arrived. Brooks, Kazee, and Stella Preece stopped briefly at the Channelview river bottoms, where Brooks disposed of his revolver.

After reviewing text messages on Hourshad's cell phone, the police focused their investigation on Hourshad and Brown. The State charged Hourshad with aggravated assault and Brown with murder. Further investigation led to their discovery that Bailey, Brooks, and Kazee were also present at Saldana's murder and that they were members of the Aryan Brotherhood of Texas (ABT) prison

4

gang. Investigators learned that Brooks, who was an ABT captain, had a grievance against Saldana because Saldana had shot Brooks in the foot in a previous altercation. Brooks had ordered other gang members to "be violent" to Saldana. At the time, however, the State did not charge Bailey. A year later, the police interviewed Brown again; this interview provided them with evidence against Bailey. The State dropped the murder charges against Brown.

At trial, Hourshad, Brown, and Kazee testified against Bailey as to the events leading to Saldana's murder. The jury charge identified them as accomplice witnesses. Stella and Rose Preece, who also testified, were not identified as accomplices to the murder.

Stella Preece testified that Bailey called Brooks when Stella was at the game room with Rose, Brooks, and Kazee. She testified that Bailey called again when they were in the car driving to Hourshad's house. Stella became upset that they were driving to Hourshad's house, and she insisted that they drop Rose off before they got there so that Rose would not be involved with what happened. She claimed that Brooks, Bailey, and Kazee did not carry guns when they entered the house, but looked "shook up" when they left the house.

Rose Preece testified that when Bailey called Brooks, Brooks took the call on speaker phone. She heard Bailey say "Hey, I got him." According to Rose, when Bailey said this, Brooks "tensed up visibly" and got "red in the face." Rose

5

heard Tara Brown in the background, and Stella and Brown began arguing. The phone call ended, but Bailey called again to tell Brooks that "Tara [could] talk to [Sergio] and get him to go somewhere." Before reaching Hourshad's house, Stella demanded that Brooks let Rose out of the car; Brooks eventually acquiesced and dropped her off.

The State presented forensic evidence that one of the bullets found at the scene was consistent with a Springfield 9 millimeter semiautomatic pistol of the kind that Bailey carried.

In his defense, Bailey's counsel conceded that Bailey was present at the killing, but he argued that the State had failed to prove that Bailey shot Saldana or that he had the necessary mental state to be guilty of murder. He attacked the credibility of the State's witnesses, suggesting that the State had made promises to the witnesses in exchange for their testimony, and that Stella and Rose were associated with the Aryan Brotherhood gang. Bailey's counsel further argued that, while investigators found a bullet associated with his gun at the scene, the fired shell casing associated with that bullet did not match Bailey's gun.

Bailey also presented the testimony of two prisoners who purported to be ABT members. Patrick Miller denied that Bailey was a member of ABT, and suggested that Bailey was "taking the rap" for Brooks. Roy Ates, who had met

6

Bailey while in jail, denied that Bailey was an ABT member, and asserted that Bailey had denied killing Saldana.

## DISCUSSION

### I.    Accomplice Witness Instruction

Bailey first contends that the trial court erred in failing to instruct the jury on the accomplice witness rule as to Stella Preece.  He points to testimony that she is a "Featherwood," the name for a woman who is with Aryan Brotherhood men, that she was in a relationship with Brooks, and that she drove with Bailey to the home and waited outside as a lookout.  He further contends that the jury charge was misleading and did not correctly state the State's burden of proof as to the accomplice witness rule for the witnesses who were designated as accomplices.

### A.    Standard of Review

In determining whether there is reversible error in the jury charge, we first decide whether error exists, and if error exists, we determine whether the defendant was harmed.  *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Jury charge error to which the defendant did not object is not harmful and does not require reversal unless the error is so egregious that the defendant is denied a fair and impartial trial.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Here, Bailey concedes that he did not object to the jury charge at trial, and thus, if the

charge was erroneous, we apply the egregious harm standard. *See id.* The degree of harm must be evaluated in light of the entire record. *See id.* Under the egregious harm standard, we review alleged charge error by considering (1) the entirety of the charge itself, (2) the evidence, (3) the arguments of counsel, and (4) other relevant information revealed by the record. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 171.

### B. Analysis

A conviction cannot rest on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Witnesses may be accomplices as a matter of law or as a matter of fact. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law, and the trial court must instruct the jury accordingly. *Id.* If the evidence shows that the witness is not an accomplice, the trial court should not give an accomplice witness instruction. *Id.* at 440. If evidence of the witness's role in the offense is conflicting, then the trial judge should instruct the jury to determine whether a witness is an accomplice. *Id.* at 439–40.

A person may be liable as an accomplice under either a direct party theory of liability, or as a co-conspirator. *See* TEX. PENAL CODE ANN. § 7.02 (West 2011); *Zamora v. State*, 411 S.W.3d 504, 510–11 (Tex. Crim. App. 2013). A person is liable as an accomplice under a direct party theory if she participates in the offense before, during, or after its commission, with the requisite mental state. *Zamora*, 411 S.W.3d at 510–11 (Tex. Crim. App. 2013); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Such an accomplice must have engaged in an affirmative act that promotes the commission of the offense. *Id.* A witness is not an accomplice simply because he was present at the crime scene and knew about the offense but did not report it. *Smith*, 332 S.W.3d at 439; *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986) (holding that witness was not an accomplice although he was present during crime and did not abandon group who committed crime). Nor is a witness an accomplice merely because he fled from the scene. *See Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012).

To be an accomplice as a co-conspirator, a person must be party to a conspiracy, and a member of that conspiracy must commit a crime in furtherance of the conspiracy's purpose and which should have been anticipated. TEX. PENAL CODE ANN. § 7.02(b). The accomplice witness rule applies equally to persons potentially liable under a direct party theory or as co-conspirators. *See Zamora*, 411 S.W.3d at 512.

Stella Preece was not indicted for any offense, so she was not an accomplice as a matter of law. *See Smith*, 332 S.W.3d at 439. Thus, we review the evidence to determine whether it supports the submission of her role as an issue of fact. Preece did not enter Hourshad's house with Bailey, Brooks, and Kazee. However, Stella, knowing that there was "going to be trouble," insisted that Brooks drop her sister Rose off before going to Hourshad's house. Kazee testified that Brooks and Bailey retrieved their guns before entering the house, from which a jury could infer that Stella saw them enter with guns. After the shooting, Stella saw Bailey, Brooks, and Kazee leave Hourshad's house looking "shook up." Stella then drove Brooks and Kazee to the Channelview river bottoms so that Brooks could dispose of his revolver. A jury could reasonably infer from this evidence that Stella was an accomplice, either by acting with intent to further the offense or as a co-conspirator. *See* TEX. PENAL CODE ANN. § 7.02; *Zamora*, 411 S.W.3d at 510–11; *Smith*, 332 S.W.3d at 439; *Druery*, 225 S.W.3d at 498.

The State cites *Gross v. State* for the proposition that post-offense conduct standing alone is not sufficient to prove a person's guilt as a party to a crime. 380 S.W.3d 181 (Tex. Crim. App. 2012). However, *Gross* is inapposite. In *Gross*, the defendant was in the car with his brother-in-law when they got into a verbal altercation with the occupant of another car. *Id.* at 183. Without warning, and over the defendant's protestations, the defendant's brother-in-law produced a

10

shotgun and fatally shot the occupant of the other car. *Id.* The defendant panicked and drove away with his brother-in-law. *Id.* at 183–84. The Court of Criminal Appeals held that the jury could not infer from these facts a plan between the defendant and his brother-in-law to kill the victim. *Id.* at 188–89.

This case differs from *Gross* in that the record here contains evidence from which a jury could infer Stella's knowledge or intent to further the crime. In *Gross*, the Court found no evidence that the defendant knew that his brother-in-law would shoot the victim before he pulled out his shotgun. *Id.* at 188–89. By contrast, there is evidence in this case showing that Stella helped Brooks and Kazee escape, despite her prior knowledge that they planned to commit a crime of violence.

However, Bailey has not demonstrated that he was egregiously harmed by the trial court's failure to give an accomplice witness instruction for Stella in addition to the other accomplices. To support a conviction based on accomplice testimony, it is enough that the non-accomplice evidence tend to connect the defendant with the offense committed. *See Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Torres v. State*, 408 S.W.3d 400, 408 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Rose, who was not an accomplice, testified that Bailey called Brooks before the shooting to tell Brooks that he had "got him." In this phone call, Rose overheard Bailey's girlfriend Tara Brown

discuss the plan for all of them to go to Hourshad's house. The State introduced Brown's text messages to Hourshad, which document Brown telling him that "we will be right back" and asking Hourshad to stay away from the door and leave the door unlocked. Around this time, Bailey was photographed by a security camera at a nearby gas station, which corroborates the meeting of the two groups. Because this corroborating evidence tends to connect Bailey with the murder independent of Stella's testimony, Bailey was not egregiously harmed by the trial court's error. *See Munoz*, 853 S.W.2d at 559; *Torres*, 408 S.W.3d at 408.

We reject Bailey's further complaint that the jury charge was misleading in its explanation of the accomplice witness rule because it did not include an application paragraph or a credibility instruction. The portion of the jury charge concerning the accomplice witness rule contains an application paragraph. This paragraph instructs the jury not to convict solely on the basis of an accomplice's testimony and refers to Tara Brown, Joseph Kazee, and Michael Hourshad's testimony.

In addition, the jury charge is not confusing about the State's burden of proof. The jury charge defined the law of parties and applied it to the facts, instructing the jury to find Bailey guilty if it found, for example, that

> Tara [Brown] and/or Joseph Kazee and/or Vernon Brooks and/or Michael Hourshad, did then and there . . . cause the death of Sergio Saldana, by shooting

12

him with a firearm, and that the defendant, Joseph Tate Bailey, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Tara Cook and/or Joseph Kazee and/or Vernon Brooks and/or Michael Hourshad to commit the offense . . . .

TEX. PENAL CODE ANN. § 7.02. It then defined the term "accomplice" and instructed the jury that a conviction cannot rest solely on accomplice testimony, tracking the statutory language closely. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Thus, the charge explained the relevant law. The court's charge is not erroneous merely because it explains the law of parties before it explains the accomplice witness rule. *See Barrios v. State*, 283 S.W.3d 348, 352–53 (Tex. Crim. App. 2009) (holding that the jury may consider the parts of the charge in the order they choose and that the charge must be considered as a whole).

Bailey contends that the trial court should have instructed the jury only to convict if it believed the testimony of the accomplice witnesses because a conviction cannot be had upon the testimony of an accomplice unless the jury first believes that the accomplice evidence is true. The court's charge, however, generally instructed the jury on the proper burden of proof, including that one accomplice could not provide corroboration for another, and that the jury was the sole judge of the credibility of the witnesses. The statute regarding accomplice witness testimony requires no specific instruction as to the credibility of

13

accomplice witnesses. Thus, Bailey has not demonstrated that the trial court erred in failing to include an additional instruction on the credibility of the witnesses.

## II. Legal Sufficiency

Bailey contends that the evidence presented at trial is legally insufficient to support his conviction for murder because the State failed to corroborate the accomplice testimony of Brown, Hourshad, Kazee, and Stella Preece.

## A. Standard of Review

Under article 38.14 of the Texas Code of Criminal Procedure, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense." *McDuff v. State*, 939 S.W.3d 607, 612 (Tex. Crim. App. 1997) (citing *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994)); *Rios v. State*, 263 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd).

In conducting this sufficiency analysis, we disregard all accomplice evidence and determine whether the other inculpatory facts and circumstances in

14

evidence tend to connect the defendant to the offense. *Munoz*, 853 S.W.2d at 559. The evidence is sufficient if some non-accomplice evidence tends to connect the defendant to the commission of the offense alleged in the indictment; it need not, by itself, directly link the defendant to the crime or prove his guilt beyond a reasonable doubt. *McDuff*, 939 S.W.3d at 613; *Hernandez v. State*, 939 S.W.3d 173, 176 (Tex. Crim. App. 1997); *see also Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (explaining that circumstances that are "apparently insignificant may constitute sufficient evidence of corroboration"); *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001) (noting that rule requires "some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime").

A person commits murder if he intentionally or knowingly causes the death of an individual or, intending to cause serious bodily injury, commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02 (West 2011). Under the law of parties, a person is criminally responsible for an offense committed by another if, acting with intent to aid in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the person committing the offense. *Id.* § 7.02(a)(2) (West 2011).

**B.     Analysis**

Sufficient non-accomplice evidence connects Bailey to Saldana's murder. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Smith*, 332 S.W.3d at 442; *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).    While Rose Preece was not present at the time of the murder, she was present in the car on the way there, and her account of that time frame is consistent with the other non-accomplice evidence.  Rose testified that when they were driving to Hourshad's house, Brooks and Bailey were talking via speakerphone.  In particular, she testified that Bailey told Brooks that he'd found a person who he wanted to target.  This corroborates the accomplice testimony because it suggests that Bailey had found Saldana and intended to hurt him.  She testified that she overheard Bailey tell Brooks, "I got him," in connection with Saldana.

The documentary and forensic evidence further connects Bailey to the murder.  In her text messages to Hourshad, recovered by the police, Brown, who was Bailey's girlfriend, says that "we are coming," and "we are on our way."  The messages inquire whether Saldana is there, ask about his physical characteristics to verify that it's him, and confirm that he's still sitting on the couch.  They confirm that Hourshad and Saldana are the only people there, and instruct Hourshad to leave the door unlocked and stay away from the door.  She texted, "[t]here are

16

about to be three people coming in; don't be by the door or by him; don't worry." Further, at about the time Brown messaged Hourshad to leave the door unlocked, Bailey was photographed by a surveillance camera at a nearby gas station, at the time the accomplices testified that he was buying gas to refill Brooks's gas tank.

Bailey contends that the shell casing found near Saldana's body could not have been fired from his gun. Brown, Bailey's girlfriend, testified at trial that Bailey carried a Springfield 9 millimeter handgun into Hourshad's house on the day of the shooting. The firearms expert who testified at trial noted that a search of a database of handgun characteristics did not return any Springfield handguns as a possible match for both the casing and the bullet. Bailey argues that this demonstrates that he did not fire either of the bullets found at the scene. However, Bailey overlooks that the State needed only to prove that Bailey intentionally or knowingly aided in the commission of the offense, regardless of who fired the fatal shot. *See* TEX. PENAL CODE ANN. § 7.02(a)(2).

Taken together, the non-accomplice evidence introduced at trial sufficiently connects Bailey to Saldana's murder. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Smith*, 332 S.W.3d at 442; *Simmons*, 282 S.W.3d at 508.

## III. Evidentiary Challenge

Bailey complains that the trial court erred in overruling his objection to Brown's testimony that Bailey was "in and out of prison." The State elicited the following testimony from Brown on direct examination:

> STATE: In September of 2012, Mr. Bailey is your on-and-off-again boyfriend; but could you tell me, how long had you known him prior to that?
>
> BROWN: We met in 2006.
>
> STATE: And so over those six years, was he someone that you would occasionally date?
>
> BROWN: Well, he – we would be together and he would get in trouble or going in and out of prison and he'd get out and get back together.
>
> DEFENSE COUNSEL: Objection, Judge. May I approach?
>
> THE COURT: Yes.
>
> (Discussion at the bench.)
>
> DEFENSE COUNSEL: I object to her mentioning that he's gone to prison or gotten in trouble, violation of the motion in limine.
>
> THE COURT: The objection's overruled. Just move on.
>
> (End of bench discussion.)

THE COURT: Jury will disregard the last statement.

Texas Rule of Evidence 404(b) provides that evidence of other crimes is not admissible to prove that on a particular occasion the defendant acted in accordance with that character. TEX. R. EVID. 404(b). An instruction to disregard may, however, cure the erroneous admission of inadmissible testimony. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Campos v. State*, 458 S.W.3d 120, 138 (Tex. App.—Houston [1st Dist.]), *rev'd on other grounds*, 466 S.W.3d 181, 182 (Tex. Crim. App. 2015). Generally, we presume that the jury followed the trial court's instruction to disregard. *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (citing *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988)). An instruction to disregard may not, however, cure error if its proponent deliberately admitted it to prejudice the defendant or if it was too inflammatory for the jury to ignore. *See Kemp*, 846 S.W.2d at 308; *Campos*, 458 S.W.3d at 138.

The State concedes that Brown's testimony that Bailey was "in and out of prison" was admitted in error, and the trial court should have sustained Bailey's objection. TEX. R. EVID. 404(b). However, the trial court instructed the jury to disregard Brown's statement. *See Kemp*, 846 S.W.2d at 308; *Campos*, 458 S.W.3d at 138. The record does not support a conclusion that the State elicited Brown's testimony deliberately. The prosecutor asked Brown about the particulars of her relationship with Bailey; Brown volunteered that Bailey had been "in and out of

19

prison" during the course of that relationship. After Bailey's objection, the prosecutor changed the subject. The State did not emphasize Bailey's criminal history in its closing argument or attempt to elicit any testimony about his time in prison. Accordingly, we hold that the presumption that the error was cured by the trial court's instruction prevails. *See Hinojosa*, 4 S.W.3d at 253; *Kemp*, 846 S.W.2d at 308; *Campos*, 458 S.W.3d at 138.

## IV. Violation of Discovery Order

Bailey contends that the State violated his rights by failing to provide him with a recorded police interview with Tara Brown, in violation of the trial court's discovery order. Article 39.14 of the Code of Criminal Procedure requires the State to produce any "written or recorded statements of a . . . witness" upon the defendant's timely request. TEX. CODE CRIM. PROC. ANN. art. 39.14 (West 2005 & Supp. 2015). Evidence willfully withheld by the State from disclosure under a discovery order must be excluded from evidence. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). When the State has not wrongfully withheld evidence but the defendant is unfairly surprised because of the State's failure to comply, the appropriate remedy is a continuance, to provide the defendant an opportunity to review the evidence. *See State v. LaRue*, 152 S.W.3d 95, 100 (Tex. Crim. App. 2004) (affirming court of appeals opinion finding that continuance was appropriate); *Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994) (any

20

error in allowing witness to testify over defendant's claim of surprise was made harmless by defendant's failure to ask for continuance). Failure to request a continuance waives a defendant's complaint of surprise on appeal. *See LaRue*, 152 S.W.3d at 100; *Barnes*, 876 S.W.2d at 328.

On cross-examination during the trial, the State's lead investigator, Officer Cervantes, testified that the police interview with Tara Brown was recorded. Bailey's counsel then informed the court that a prosecutor had told him that no such recording existed, and demanded a chance to listen to it, if it did exist. The trial prosecutor claimed that she did not know of a recording, and conceded that if one existed, she would "have to get it [for defense counsel]." The trial court instructed trial counsel to continue his cross-examination. At the end of the day, Bailey objected, arguing that he might need to recall witnesses based on the recording's content. The record contains no resolution of the conflict; i.e., whether the State ever located the recording and provided it to counsel, and if so, whether it contained information that was helpful to the defense. At the start of the next day of the trial, Bailey rested, and did not mention the recording again.

Bailey relies on *Oprean v. State*, in which the Court of Criminal Appeals held that evidence willfully withheld from disclosure under a discovery order must be excluded from evidence. 201 S.W.3d at 726. In *Oprean*, the trial court signed a pre-trial order requiring the State to produce any video containing the defendant's

21

voice.  *Id.* at 725.  Immediately before the punishment phase, the defendant learned that the State possessed such a video.  *Id.*  The State introduced the video over the defendant's objection.  *Id.*  The Court of Criminal Appeals reversed, holding that because the State willfully withheld the video, the trial court should have excluded it from evidence.  *Id.* at 728.

Bailey, however, has not shown that the State willfully withheld Brown's statement, or that a recording was located.  In *Oprean*, the Court of Criminal Appeals characterized the State's conduct as a "calculated effort to frustrate the defense."  *Id.* at 728.  The court cited several deceitful statements by the State, from which it inferred bad intent.  *Id.* at 727–28.  By contrast, our examination of the record in this case reveals no evidence of deceit by the State, and the prosecutor acknowledged on the record her obligation to provide the recording, if it existed.

In the absence of willful withholding by the State, the defendant must request a continuance to preserve a complaint of unfair surprise for appeal.  *See LaRue*, 152 S.W.3d at 100; *Barnes*, 876 S.W.2d at 328.  Bailey did not request a continuance to locate and listen to the recording.  He never indicated whether the State had located it or provided it to him. Thus, Bailey has not shown a violation of the discovery order which would require reversal.  *See Oprean*, 201 S.W.3d at 726; *LaRue*, 152 S.W.3d at 100; *Barnes*, 876 S.W.2d at 328.

## V.     Reading of Testimony During Deliberations

Bailey next contends that the trial court erred by failing to limit the testimony it read back to the jury to the portions relevant to the jury's request.  By doing so, Bailey argues, the trial court improperly commented on the weight of the evidence, denying him a fair trial.

During its deliberations in the guilt phase, the jury requested to hear again the testimony of Stella and Rose Preece as to how they identified Bailey as the person Brooks was talking to on the phone.  The trial court read back the following testimony by Stella:

> STATE:  Okay.  On this day in September of 2012, you said that you guys are pinging in the video – playing video poker.  At some point on that day, do you come into contact with Joseph Bailey?
>
> STELLA:  Yes, ma'am.
>
> STATE:  How does that contact occur?
>
> STELLA:  I know that he called [Brooks] and while we were pinging – I don't know, like, what he said or whatever, but wound up we left the game room and –
>
> STATE:  Hold on one second.  How do you know that [Brooks] received a phone call from [Bailey]?
>
> STELLA:  He was sitting right there.

STATE:  Without telling us what anyone said, could you hear parts of that conversation?

STELLA:  I could hear what [Brooks] was saying.

THE COURT:  There's more.

STATE:  So what happens when you guys run out of gas?

STELLA:  [Brooks] called [Bailey] and told him we were out of gas and him and Tara came and [Brooks] left with them to go get gas.  Me and [Bailey], we stayed in the car.  I don't think Rose was in the car anymore.

STATE:  Let's talk a little bit about that.  When you, Rose, [Kazee], and [Brooks] were in the car, did you ever receive another phone call from Joseph Bailey?

STELLA:  I didn't.  I didn't receive any phone calls. [Brooks]'s the one that had the phone, but I'm sure – I'm pretty sure there was.

STATE:  I understand that it wasn't your phone.  Do you remember if Dinky answered the phone in the car from Joseph?

STELLA:  I know that he answered the phone, yeah.

THE COURT:  Members of the jury, please retire to the jury room and continue your deliberations.

Bailey objected to the inclusion of the portion following the question, "So what happens when you guys run out of gas?"  Bailey argued that the testimony was not

24

responsive to the jury's question because it did not directly state how Stella identified Bailey.

Code of Criminal Procedure article 36.28 provides that "if the jury disagree[s] as to the statement of any witness they may . . . have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006); *see also Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005) ("This statute seeks to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have."). After determining that the jurors dispute a portion of testimony, the trial court must "strike a balance between reading too much or too little testimony in response to the jury's request." *Arnold v. State*, 234 S.W.3d 664, 676 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Fox v. State*, 283 S.W.3d 85, 89 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("If [the jury request] is proper, the trial court must then interpret the communication, decide what sections of the testimony will best answer the inquiry, then limit the rereading accordingly."). We review the trial court's ruling on the jury's request to review disputed testimony for an abuse of discretion. *Arnold¸* 234 S.W.3d at 676.

Bailey argues that the testimony in question does not explain that Stella knew that Bailey was the other party to the telephone call, and thus the trial court

25

erred in reading it.  The testimony, however, concerned the circumstances surrounding Stella's identification of Bailey, including that Brooks had received the phone call while they were in the car, after they had run out of gas and asked Brown and Bailey to help them.  We hold that the trial court was within its discretion in reading it back to the jury.  *See* TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006); *Fox*, 283 S.W.3d at 89; *Arnold*, 234 S.W.3d at 676.

## VI.    Evidence of Extraneous Crimes by Witnesses

Bailey next contends that the trial court erred by permitting evidence of extraneous crimes by witnesses Patrick Miller and Vernon Brooks.  He first complains about the admission of evidence of another ABT-related murder case in which Miller admitted involvement.  The State asked Miller on cross-examination whether Miller knew a person named Greg Gammon, allegedly an ABT member.  Over Bailey's objection, the State asked Miller whether he gave a statement to law enforcement in Gammon's murder trial, which he admitted.  Bailey also complains that the trial court should not have allowed the State to ask Miller if he knew that Brooks was under investigation for three other murders.

In order to preserve a complaint of error on appeal, the defendant must raise it before the court by a timely objection.  TEX. R. APP. P. 33.1; *Jimenez v. State*, 446 S.W.3d 544, 549–50 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  If his objection is sustained, the defendant must ask for an instruction to disregard and

26

move for a mistrial. *Ashire v. State*, 296 S.W.3d 331, 343 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If a defendant fails to properly preserve error, his complaint is waived on appeal. *See id.* ("It is well settled that when appellant has been given all the relief he requested at trial, there is nothing [for him] to complain of on appeal.") (quoting *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993)).

The trial court sustained Bailey's objection to the State's questions about Miller's role in the Greg Gammon murder case. Because Bailey did not ask for an instruction to disregard or move for a mistrial, any further complaint is waived. TEX. R. APP. P. 33.1; *Jimenez*, 446 S.W.3d at 549–50; *Ashire*, 296 S.W.3d at 343. Because Bailey did not object at all to the State asking Miller whether he knew Brooks was under investigation for three other murders, his complaint is also waived as to that question, leaving nothing further for our review. TEX. R. APP. P. 33.1; *Jimenez*, 446 S.W.3d at 549–50.

## VII. Comment on Failure to Testify During Punishment Phase

Bailey contends that by commenting on his failure to testify in the punishment phase, the State violated his right against self-incrimination. In its closing argument at punishment, addressing Bailey's family's pleas for mercy, the State made the following comments:

> STATE: We've all been dealt bad things. None of the rest of us committed a murder. They asked for mercy

27

because mercy is about me. He's never taken any responsibility. Never once has he come in here and said what his role is.

In considering whether the State violated the defendant's Fifth Amendment right by commenting on his failure to testify, "[we] view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). It is not enough that the language might be construed as an implied or an indirect allusion to the defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 549 (Tex. Crim. App. 2007). The defendant's right is only violated if the language used was manifestly intended or was of such a character that the jury would necessarily take it as a comment on the defendant's failure to testify. *Id.*

The facts in this case recall those in *Snowden v. State*, 353 S.W.3d 815 (Tex. Crim. App. 2011). *Snowden* concerned an assault by the defendant on his pregnant girlfriend. *Id.* at 816–17. In *Snowden*, the prosecutor commented that "[the defendant] doesn't give two hoots about the mother of his baby or his baby because he looks her in the eye and punches her in her 38 week old stomach without remorse, just like he is today." *Id.* at 817. Discussing its *Snowden* decision in a later case involving a prosecutor's punishment phase argument, the Court of Criminal Appeals observed that while the comment about the defendant's

28

lack of remorse was supported by the evidence that he punched his pregnant girlfriend in the stomach, the prosecutor's next phrase, "just like he is today," was a prohibited comment on the defendant's failure to take the stand and show remorse. *Randolph*, 353 S.W.3d at 894 (Tex. Crim. App. 2011). Here, as in *Snowden*, the prosecutor's comments cannot be read as a general comment on the defendant's failure to take responsibility for his actions. By referring to the defendant's choice not to "come in here," the State impermissibly commented on Bailey's failure to testify. Accordingly, we hold that the trial court erred by overruling Bailey's objection. *See Randolph*, 353 S.W.3d at 891; *Snowden*, 353 S.W.3d at 817.

Because the trial court erred, we must analyze whether Bailey was harmed. Because a comment on a defendant's failure to testify infringes on his right against self-incrimination, it is constitutional error, and we must reverse unless we can conclude beyond a reasonable doubt that the error did not contribute to his punishment. *Snowden*, 353 S.W.3d at 818, 822 (citing TEX. R. APP. P. 44.2(a)). Our primary inquiry is what effect the error had, or may have had, on the jury's decision. *Lair v. State*, 265 S.W.3d 580, 590 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the

prosecution." *Id.* at 591 (quoting *Wimbrey v. State*, 106 S.W.3d 190, 193 (Tex. App.—Fort Worth 2003, pet. ref'd)).

In evaluating whether trial error of a constitutional dimension was harmful under Texas Rule of Appellate Procedure 44.2(a), we consider: (1) the nature of the error; (2) the extent to which it was emphasized by the State; (3) the probable implications of the error; and (4) the weight the jury would likely have assigned to it in the course of its deliberations. *Snowden*, 353 S.W.3d at 822. These factors are not exclusive; other considerations may inform our harm analysis. *See id.* On the other hand, not every factor will necessarily apply to every constitutional error subject to harm analysis. *Id.*

By calling the jury's attention to Bailey's exercise of his Fifth Amendment right during the punishment phase, Bailey's constitutional rights were violated. The other *Snowden* factors, however, indicate that Bailey was not harmed by the error.

First, the State did not emphasize Bailey's failure to testify in its closing argument. The State's argument focused on the threat Bailey posed to society. The State characterized Bailey as a "career criminal" and a "master manipulator," and suggested that the only way to contain him was to "put him in a cell and . . . separate him from [the community]." It described the Aryan Brotherhood of Texas as having "overrun" the nearby Highlands area, "sell[ing] drugs, sell[ing]

30

firearms, and . . . control[ling] that community," and suggested that the only way to protect the Highlands area was to sentence Bailey to life imprisonment. The State's closing argument did not mention again that he did not testify. The lack of emphasis on Bailey's failure to testify limits the weight the jury would likely have assigned to improper remarks, the fourth *Snowden* factor. *Snowden*, 353 S.W.3d at 822.

Applying the third *Snowden* factor, it is unlikely that the error had any effect on the outcome of the punishment hearing. *Id.* The sentencing range in this case was 25 years to life. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 19.02(c) (West 2011 & Supp. 2015). The jury assessed punishment at 35 years, near the low end of this range. Bailey's relatively light punishment, combined with the lack of emphasis placed on his failure to testify and its peripheral importance to the major issues discussed in the State's closing argument, lead us to conclude beyond a reasonable doubt that Bailey was not harmed by the trial court's error. TEX. R. APP. P. 44.2(a); *Snowden*, 353 S.W.3d; *Lair*, 265 S.W.3d at 590.

## VIII. Additional Improper Arguments

Bailey contends that the trial court erred in permitting the State to engage in additional improper closing arguments.

## A.    Standard of Review

Proper jury argument is limited to (1) a summation of the evidence presented at trial, (2) reasonable deductions and inferences drawn from that evidence, (3) responses to opposing counsel's argument, and (4) appropriate pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A prosecutor cannot use closing argument to put matters before the jury that are outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986); *Gonzalez v. State*, 115 S.W.3d 278, 284 (Tex. App.—Corpus Christi 2003, pet. ref'd). The trial court has broad discretion in controlling the scope of closing argument. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.); *see Herring v. New York*, 422 U.S. 853, 862–63, 95 S. Ct. 2550, 2555–56 (1975). "[A] defendant's failure to object to a jury argument or [his] failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *accord Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *McDonald v. State*, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Improper argument error is non-constitutional error. *Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008). Non-constitutional error that does not

affect substantial rights must be disregarded. *Id.*; *see* TEX. R. APP. P. 44.2(b). To determine whether the defendant's substantial rights were affected by improper argument, we balance the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's comment), (2) any curative measures taken (the effect of any cautionary instruction by the trial court), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosely v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Kibble v. State*, 340 S.W.3d 14, 21 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

## B. Analysis

Bailey argues that he was prejudiced by improper argument on five different subjects in the guilt phase. He alleges that, improperly and without basis in the record, the State (1) accused defense witness Patrick Miller of "covering" for ABT members by testifying falsely for them; (2) praised Officer Cervantes; and (3) accused ABT members of intimidating witnesses. He also alleges that the State accused trial counsel of bullying Officer Cervantes and fabricating Roy Ates's testimony.

### 1. Accusation that Miller "Covers" for Gang Members

In its closing statement, the State accused Miller of falsely vouching for ABT members in court:

> STATE: [W]hen Pat Miller came to testify, he tried to testify for Joseph Bailey that he wasn't involved in a murder. Except Pat Miller was forced to admit that apparently, whenever anyone in the Aryan Brotherhood commits a murder – and he told you about Greg Gammon – he just happens to show up and says the person didn't intend to commit the crime.
>
> DEFENSE COUNSEL: Judge, I object to that as outside the evidence.
>
> THE COURT: Overruled. Jury will recall the evidence.
>
> STATE: I asked him point-blank about being a witness in another murder committed by a member of the Aryan Brotherhood and he told you he was. That's what they do. They show up and they vouch for each other.

Miller, an ABT member, testified at trial that Brooks confessed to him that he killed Saldana and that Bailey was "taking the rap" for him. He claimed that he later met Bailey when they were incarcerated together in the Harris County jail. Miller claimed that he was motivated to testify because he did not want to see an innocent man punished, even though as an ABT member, testifying put him at great risk. From Miller's testimony, the State had a basis to suggest in closing argument that Miller had an ulterior motive. *See Wesbrook*, 29 S.W.3d at 115; *Carmen*, 358 S.W.3d at 300.

34

## 2.     Remarks about Officer Cervantes

Bailey also challenges the State's remarks about Officer Cervantes, the lead police investigator.  The State argued as follows:

> STATE:  Now, opposing counsel has spent a lot of time talking about the evidence in this case and attacking it. You have all these reports.  They're all in evidence. What else did we learn when Jessica Cervantes testified? Jessica Cervantes told you about her investigation in this case.  I know you guys don't come down here every day and you don't hear about murder cases every day. Jessica Cervantes is the only reason that Joseph Bailey will be brought to justice.  Jessica Cervantes never quit on this case.  She never quit on the Saldana family because she promised them justice.  And unless you've gone into a living room and promised a family when their family member is dead that you will do everything –
>
> DEFENSE COUNSEL:  Judge, I object.  That's outside the evidence.
>
> THE COURT:  Overruled.
>
> STATE:  Until you have gone into a family's living room and until you have prayed with them for justice, you will never know what that promise is like and the cross she has beared [sic].

The State's argument was responsive to Bailey's counsel's criticism of Cervantes's work and engagement on the case.  At trial, counsel remarked repeatedly that Cervantes "doesn't know her own case," accusing her of "sloppy

police work." He characterized the investigators' efforts as haphazard and incompetent, commenting that they couldn't "get their act together." Bailey argued that this case was only Cervantes's second murder investigation, that Cervantes made mistakes, and she did not care enough to correct them.

The State may argue subjects that would otherwise be improper when invited to do so by the defendant's own remarks. *Acosta v. State*, 411 S.W.3d 76, 93 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim. App. 1987)). Bailey attacked Officer Cervantes's competence and accused her of indifference. Thus, the trial court reasonably could have concluded that counsel invited the State's argument. *See Wesbrook*, 29 S.W.3d at 115; *Albiar*, 739 S.W.2d at 362; *Acosta*, 411 S.W.3d at 93.

### 3. Accusation of Witness Intimidation

Bailey complains that the State's arguments concerning witness intimidation by other ABT members were improper. The State remarked as follows:

> STATE: [Y]ou would have to be blind, deaf, and dumb not to notice all the people that have come in and out of this courtroom for the last week. If you don't think they were watching the people that testified and making a note of where –
>
> DEFENSE COUNSEL: Judge, I object to that as outside the evidence.
>
> THE COURT: Overruled. Jury will recall the evidence.

STATE: If you didn't notice that every single witness that testified, I never asked them their home address. They didn't even want to say what part of town they live in. And a couple of them were, like, whoa, whoa, whoa, you want to know where I live? They don't want that on the record. They wanted to know all of these people that were watching because they are scared and they live in a community where they cannot leave.

The State continued this line of argument, that the ABT was intimidating its witnesses, for the next page and a half of trial transcript, until it concluded and the jury was dismissed to begin its deliberations. Bailey did not renew his objection after the State's assertion that its witnesses had "put their lives on the line," or that by convicting Bailey, the jury would tell him that he "will not intimidate witnesses anymore." A defendant must object each time an improper argument is made, or he waives his complaint. *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010, *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Because Bailey failed to object to the State's repeated comments about witness intimidation, his complaint is waived. *Id.*

### 4. Remarks about Counsel

In its closing argument, the State commented on Bailey's counsel:

STATE: If you'll think back, Jessica Cervantes took this witness stand and opposing counsel was extremely derogatory and rude and stood up here in the corner and tried to get in her face and bully her until the Judge –

> DEFENSE COUNSEL:  Judge, I object to that as striking counsel over the shoulder of the defendant.
> THE COURT:  Overruled.
> DEFENSE COUNSEL:  Improper argument.
> THE COURT:  Overruled.
> DEFENSE COUNSEL:  Move for a mistrial.
> THE COURT:  Overruled.
> STATE:  Stood right there up in her face, didn't get her rattled, and she admitted to the mistakes she made.

The State may not "strike at the defendant over the shoulder of counsel" through personal attacks on the defendant's counsel.  *Brown v. State*, 270 S.W.3d 564, 571–73 (Tex. Crim. App. 2008).  The State called Bailey's counsel "extremely derogatory and rude" and accused him of "bullying" Cervantes.  These are attacks on Bailey's counsel, and the trial court should have sustained Bailey's objection to them.  *See id.*

However, to be entitled to relief, Bailey must prove that he was harmed by the trial court's error.  *Id.*  To evaluate whether the defendant was harmed, we balance three factors: the likely prejudicial effect of the prosecutor's comment, any curative measures by the trial court, and the likelihood of conviction without the misconduct.  *See Mosely*, 983 S.W.3d at 259; *Kibble*, 340 S.W.3d at 21.  After Bailey objected, the State moved on.  Thus, the comments' prejudicial effect on Bailey was limited.  *Id.*  We hold that Bailey has not shown harm from the trial

court's error; thus, he is not entitled to relief. *See Brown*, 270 S.W.3d at 571; *Mosely*, 983 S.W.3d at 259; *Kibble*, 340 S.W.3d at 21.

### 5. Accusations that Counsel Procured False Testimony

Finally, the State impeached Ates with his initial statement to the police, in which he claimed that "Christina and Nicole" were with Bailey at the time of the murder. At closing argument, the State accused Ates of "sell[ing] a story about a girl [sic] named Christina and Nicole." The State asserted that Bailey, Miller, and Ates were communicating outside of trial to coordinate their stories. Bailey complains that this is an attack on him over his counsel's shoulder.

As noted above, the State may not "strike at the defendant over the shoulder of counsel" by impugning defense counsel. *Brown*, 270 S.W.3d at 571–73 (Tex. Crim. App. 2008). However, we do not understand this allegation of collusion between Bailey and his witnesses as an attack on Bailey's trial counsel; instead, it appears to be a reference to the evidence that these witnesses had communicated directly with each other during the course of the murder investigation. Further, to preserve a complaint of improper jury argument for appeal, the defendant must show that his complaint was made to the trial court by a timely objection. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *McDonald v. State*, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.). An appellant's issue must correspond with the objection he made at trial. *Broxton v.*

*State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Id.*; *see Resendez v. State*, 306 S.W.3d 308, 315–16 (Tex. Crim. App. 2009). Bailey only objected on the ground that the prosecutor's statement about Christina and Nicole concerned facts not in evidence. Thus, Bailey waived any complaint that the State wrongly impugned his trial counsel. *Id.*

## IX. Enhancement Paragraphs

Bailey complains that the trial court erred by failing to read the enhancement paragraphs against him and obtain his plea at the beginning of the punishment phase. The record is silent as to whether the trial court did so. The State, however, presented evidence of Bailey's enhancement offenses in the punishment hearing, and the jury charge on punishment included them. Bailey objected to the jury charge on the ground that the sentencing range he was subject to should not be increased because his prior offenses were not recited to him, nor his pleas obtained. The trial court overruled his objection.

Article 36.01 of the Code of Criminal Procedure requires the trial court to read the enhancement paragraphs alleged against a defendant and obtain the defendant's plea to each enhancement paragraph at the beginning of the punishment phase of trial. TEX. CODE CRIM. PROC. ANN. art. 36.01 (West 2007); *Turner v. State*, 897 S.W.2d 786, 787–88 (Tex. Crim. App. 1995); *Linton v. State*,

15 S.W.3d 615, 620 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Failure to read the enhancement paragraphs and obtain the defendant's plea to them is non-constitutional error, subject to harm analysis. *Linton*, 15 S.W.3d at 620 (citing *Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999)); *see* TEX. R. APP. P. 44.2. Pursuant to Rule of Appellate Procedure 44.2(b), non-constitutional error is only reversible if it affects the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *see Linton*, 15 S.W.3d at 620. In determining this, we must decide whether the error had a substantial or injurious effect on the jury's verdict. TEX. R. APP. P. 44.2(b); *Linton*, 15 S.W.3d at 620–21.

The State concedes, and we agree, that if the trial court did not read the enhancement paragraphs to Bailey and obtain his plea, it committed error. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a); *Linton*, 15 S.W.3d at 620–21. However, Bailey's brief does not explain how he was harmed by this error. Nor does our examination of the record reveal any prejudice to Bailey because of the omission. He cannot have been surprised by the appearance of the enhancement paragraphs in the jury charge, since the State introduced his prior convictions into evidence at the beginning of the punishment phase of trial. *See Linton*, 15 S.W.3d at 621 (observing that the defendant was not misled into believing that the State had abandoned enhancement paragraphs because the State admitted "pen packets" at the beginning of punishment phase). Nor did Bailey incriminate himself by

admitting to his prior offenses under the false expectation that they would not increase his punishment range. *Id.* Thus, we conclude that the trial court's error was harmless. TEX. R. APP. P. 44.2; *Aguirre-Mata*, 992 S.W.2d at 499; *Linton*, 15 S.W.3d at 620–21.

### X. Ineffective Assistance of Counsel

Finally, Bailey contends that his trial counsel was ineffective for (1) failing to request an accomplice witness instruction, (2) failing to object to the allegedly misleading jury charge, and (3) failing to object to evidence of Bailey's gang affiliation. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) a reasonable probability exists that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). A defendant has the burden to establish both prongs by a preponderance of the evidence; a failure to show either defeats his ineffectiveness claim. *See Mitchell v. State*, 68 S.W.3d 640, 645 (Tex. Crim. App. 2002) (rejecting ineffective assistance challenge for failure to show prejudice without first addressing attorney's performance). The record must firmly support a claim of ineffective assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Counsel is not ineffective for failing to request a jury instruction to which the defendant is not entitled. *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004). Nor is counsel ineffective for failing to object to a jury charge that is not erroneous. *Luster v. State*, 85 S.W.3d 865, 871 (Tex. App.—Eastland 2002, pet. ref'd). Because Bailey's allegation that the jury charge was confusing and misstated the State's burden of proof is without merit, his trial counsel was not ineffective in failing to object to the court's charge on that ground. *See Nailor*, 149 S.W.3d at 133–34; *Luster*, 85 S.W.3d at 871.

Nor does counsel's failure to request an accomplice witness instruction for Stella require reversal. Even if Bailey's trial counsel erred by not requesting an instruction, he cannot show harm, because the record contains adequate corroborating evidence to link Bailey to the crime, even without Stella's testimony. Thus, Bailey is not entitled to relief. *See Mitchell*, 68 S.W.3d at 642.

Finally, Bailey complains that his trial counsel was ineffective because he did not object to the admission of evidence of Bailey's gang membership. Evidence of a defendant's character is generally inadmissible to prove that he acted in conformity with that character. TEX. R. EVID. 404(a)(1). Further, evidence of other crimes or bad acts is not admissible to prove that the defendant acted in accordance with a propensity to commit such acts. *Id.* 404(b)(1). Such evidence may, however, be admissible for other purposes, such as to prove motive,

43

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* 404(b)(2). Evidence of gang affiliation may be relevant to show that the defendant had a motive to commit a gang-related crime. *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002). Evidence that is otherwise admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Vasquez*, 67 S.W.3d at 239–40.

Bailey contends that because Saldana's murder could be understood as a revenge killing in retaliation for Saldana shooting Brooks in the foot, his gang affiliation was not relevant to his motive for participating in the murder. This is inconsistent, however, with the State's theory and the proof of Bailey's intent. According to Kazee's testimony, Brooks was an ABT captain, who ordered other ABT members to "take violent action" against Saldana. Bailey then orchestrated the murder to call Brooks, a higher-ranking ABT member, out on this threat of violence, and to advance himself within the ABT organization. Because Brooks's order and Brooks's and Bailey's relative positions in the ABT hierarchy were integral to Bailey's motive in orchestrating the killing, Bailey's ABT membership was admissible under Rule 404(b). TEX. R. EVID. 404(b); *Vasquez*, 67 S.W.3d at 239–40.

Nor was the evidence of Bailey's gang membership inadmissible as unfairly prejudicial. To violate Rule 403, it is not enough that evidence prejudice the

44

defendant. It must unfairly prejudice the defendant. TEX. R. EVID. 403; *Vasquez*, 67 S.W.3d at 240; *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Unfair prejudice is defined as "an undue tendency to suggest decision on an improper basis, [such as] an emotional one." *Vasquez*, 67 S.W.3d at 240 (quoting *Rogers*, 991 S.W.2d at 266). Bailey suggests that the jury might have convicted him because they were "frightened and inflamed" by his gang membership, not because the State met its burden. But the trial court was within its discretion to conclude that any danger of unfair prejudice did not substantially outweigh the probative value of the evidence in supporting a motive for murder. *See* TEX. R. EVID. 403; *Vasquez*, 67 S.W.3d at 240 (trial court did not err in admitting gang evidence to prove motive for robbery and murder despite claims it violated rules 401, 402, 403, and 404); *see also Medina v. State*, 7 S.W.3d 633, 643–44 (Tex. Crim. App. 1999) (evidence of gang membership and rivalries relevant and admissible despite rule 401, 403, and 404 complaints when it established motive); *Rogers*, 991 S.W.2d at 266.

**CONCLUSION**

Finding no reversible error, we affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Do not publish. TEX. R. APP. P. 47.2(b).